UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROBERT W. MCPHERSON, ET AL.                                                        Plaintiffs

v.                                                                Civil Action No. 3:25-cv-464-RGJ

SEEK NOW, INC.                                                                      Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Named Plaintiff Robert McPherson and Opt-in Plaintiffs (collectively "Plaintiffs") move for a temporary restraining order ("TRO") and preliminary injunction under Federal Rule of Civil Procedure 65 to enjoin Defendant Seek Now, Inc. ("Seek Now") from (1) disseminating its updated Master Services Agreement ("MSA") and Arbitration Agreement to putative plaintiffs, (2) requiring employees to sign the MSA and arbitration agreement, and (3) accepting any signatures from employees to the MSA and arbitration agreement. [DE 28]. Seek Now has been put on notice of Plaintiffs' motion by way of Plaintiffs' CM/ECF filing, but has neither responded nor communicated with the Court requesting an opportunity to be heard on the motion. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

**I.        BACKGROUND**

McPherson, a home inspector for Seek Now, filed a collective action complaint against Seek Now on behalf of himself and all similarly situated individuals under the Fair Labor Standards Act ("FLSA") § 201. The complaint asserts that Seek Now misclassified McPherson and other similarly situated individuals as independent contractors to avoid providing employment benefits and overtime pay. [DE 1]. As such, the complaint asks the Court to issue supervised notice

1

to other putative plaintiffs—individuals who have worked as home inspectors for Seek Now and were paid as contractors as opposed to employees. [*Id.* at 12].

Seek Now filed its answer to the complaint on October 27, 2025. [DE 23]. On November 5, 2025, Seek Now sent an email to all home inspectors ("inspectors") stating "SeekNow will be sending you an updated MSA which you will need to execute by November 19th 2025. Starting November 20th, 2025[,] no additional jobs will be assigned to you without the fully executed MSA in place." [DE 28-3 at 157]. The email also informed inspectors that they were being asked to sign a new Arbitration Agreement, described how arbitration works, and explained that Seek Now "believe[s] resolving disputes through arbitration, instead of a court, benefits both parties." [*Id.*]. The Arbitration Agreement contains a collective action waiver by which inspectors would agree to "bring any claim on an individual basis and not on a class and/or collective action . . . basis." [DE 28-2 at 152]. The Arbitration Agreement further notes that the instant action is pending in the Western District of Kentucky and states "[i]f you do not opt out of this Agreement . . . you will NOT be able to participate in the collective action." [DE 28-2 at 154]. The agreement goes on to explain that "[y]ou may opt out from this Agreement within 30 days after your receipt of this Agreement . . . [in which case] neither you nor the Company will be required to arbitrate disputes and may instead litigate those disputes without regard to this Agreement." [*Id.* at 154–55]. The MSA, meanwhile, contains its own arbitration provision stating that contractors must "agree[] to execute and abide by the Independent Contractor Mutual Arbitration Agreement," [DE 28-2 at 142]. The MSA does not, however, contain an opt-out provision. In other words, while inspectors may ostensibly opt out of the Arbitration Agreement, they may not opt out of the MSA, which itself requires inspectors to "execute and abide by" the Arbitration Agreement.

Since sending the initial email, Seek Now has sent several follow-up emails reminding employees to "take action" and that "[a]greeing to the new MSA is mandatory and required for you to continue receiving jobs . . . ." [DE 28-4 at 160–61].

Plaintiffs assert that employees who have not yet received notice of this lawsuit are "likely to believe that the MSA and Arbitration Agreement bars them from filing or joining any court action, including this one." [DE 28-1 at 122]. Moreover, "three Opt-in Plaintiffs . . . [are] in the position of having to either sign the MSA and Arbitration Agreement by November 19, 2025, which contains a statement that they cannot participate in this collective action[,] or refuse to sign and possibly lose their jobs." [*Id.* at 122–23]. In requesting a TRO, Plaintiffs therefore assert that Seek Now has violated their rights under the FLSA by (1) making "misleading and intimidating" communications to potential plaintiffs, thereby dissuading potential plaintiffs from participating in the litigation, and (2) circumventing the Court's "supervisory powers to authorize appropriate notice to potential Plaintiffs" under the FLSA collective action provision, thus making putative plaintiffs aware of the lawsuit through a binding agreement that fails to inform them of their rights. [DE 28-1 at 123, 129].

## II.   STANDARD

While Plaintiffs seek a temporary restraining order under Fed. R. Civ. P. 65(b), a TRO analysis is not appropriate here, where Plaintiffs seek to enjoin behavior based on Seek Now's improper communications with employees, not based on the merits of Plaintiffs' underlying claims. In a comparable case from this district, *Rogers v. WEBstaurant Store, Inc.*, the plaintiff filed a FLSA collective action against the defendant employer alleging a failure to pay overtime compensation. No. 4:18-CV-00074-JHM, 2018 WL 3058882, at *1 (W.D. Ky. June 20, 2018). After she filed the action, the defendant sent several emails out to all employees explaining the

lawsuit and implying that the plaintiff's claims did not have merit. *Id.* at *1–2. The plaintiff then filed a motion for a TRO and preliminary injunction to prohibit defendant from communicating with putative class members about the FLSA claims. *Id.* at *3. The Court noted that "the typical preliminary injunction analysis [was] not appropriate" and instead addressed the dispute "under the Court's authority to govern the conduct of counsel and parties in FLSA collective actions." *Id.* at *4. The Court will do the same here.

Under the FLSA, employees can sue their employers on their own behalf and on behalf of "similarly situated" persons. 29 U.S.C. § 216(b). While "'similarly situated' employees can 'opt into' a collective action by filing a written consent . . . they can join only if they are aware of the suit in the first place." *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d 622, 626 (S.D. Ohio 2023) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)). Thus, to ensure that employees receive "accurate and timely notice" of a pending FLSA collective action, § 216(b) "grant[s] the court the . . . authority to manage the process of joining multiple parties . . . ." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). This gives the district court the power and responsibility to determine whether other employees "might be similarly situated to the original plaintiffs" such that the district court should issue notice to those individuals. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023).

Given this power, "[a] district court may prevent confusion and unfairness by prohibiting and correcting communication [to potential plaintiffs] that is inaccurate, unbalanced, misleading, or coercive, or which improperly attempts to encourage class members not to join the suit." *Rogers*, 2018 WL 3058882, at *4 (quoting *Agerbrink v. Model Serv. LLC*, No. 14 CIV. 7841, 2015 WL 6473005, at *3 (S.D.N.Y. Oct. 27, 2015)). Because "pre-certification, ex parte communication with putative FLSA collective members about the case has an inherent risk of prejudice and

4

opportunities for impropriety," the district court has power to restrict communications between parties and potential class members. *Id.* (quoting *Agerbrink*, 2015 WL 6473005, at *3). "This supervisory authority exists even before a class is certified." *Id.* (quoting *Agerbrink*, 2015 WL 6473005, at *3). In fact, the need for fair communication between the parties is "especially great during the early stages of FLSA litigation" because "unsupervised, unilateral communications with [] potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided unrebutted presentation of 'facts.'" *Id.* (quoting *Agerbrink*, 2015 WL 6473005, at *3; and then quoting *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 924 (11th Cir. 2014)).

"Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication." *Agerbrink*, 2015 WL 6473005, at *10. Courts consider whether the communications, "taken as a whole and in context . . . threaten the proper functioning of the litigation," or "lead to the inescapable conclusion that class members who were exposed to these communications could not make an informed choice of whether to remain in the class or to opt out." *Id.* (quoting *A.R. ex rel. Root v. Dudek*, No. 12–60460–CIV, 2013 WL 5278668, at *9 (S.D. Fla. Sept. 19, 2013) and then quoting *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 496 (E.D. Pa. 1995)).

Upon finding that the communication is misleading or coercive, the district court must then identify the "narrowest possible relief" to protect the parties. *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981)). "[A] court order restricting communication with putative class members must be grounded in 'a clear record and specific findings that reflect a weighing of the need for a

limitation and the potential interference with the rights of the parties.'" *Id.* (quoting *Gulf Oil*, 452 U.S. at 104).

### III.    DISCUSSION

First, the Court examines whether Seek Now's communications with employees are misleading or coercive. Seek Now's email communicated to employees that they are required to sign a new MSA by November 19, or they will not be assigned any additional jobs; that is, the communication pressures employees to sign the MSA under the threat of losing income. The MSA then requires employees to sign the Arbitration Agreement, which prevents employees from participating in this collective action. These communications are coercive and constitute "an improper attempt to undermine" the collective action because they urge possible plaintiffs, under a time restraint, to sign a form giving up their rights to join this action when many of those possible plaintiffs are not yet even aware of the action. *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-CV-1412, 2016 WL 1622015, at *13 (M.D. Tenn. Apr. 19, 2016) ("Where communications are misleading, coercive, or an improper attempt to undermine the class action by encouraging class members not to participate in the suit, they may be limited by the court . . . ."). In other words, the email—which contains a threat of withholding additional work from inspectors—considered in conjunction with the MSA and Arbitration Agreements, "threatens the proper functioning of the litigation" by improperly pressuring putative plaintiffs to relinquish their right to join the action. *Dudek*, 2013 WL 5278668, at *9. Threats like the ones Seek Now makes in their emails to employees are explicit examples of coercion. *See Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (finding defendants' letter coercive when it made "multiple predictions that the lawsuit, if successful, will cause the practice to close, with the obvious consequence that employees would lose their jobs"); *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 668–69 (E.D. Tex. 2003) (holding that

an employer letter to putative class members was coercive because it suggested that the case could affect their employment and it undermined the purpose of collective action by encouraging employees not to join).

Moreover, while the Arbitration Agreement contains an opt-out provision, the MSA—under which the signer must agree to execute the Arbitration Agreement—does not. These provisions are seemingly at odds with one another and may mislead or confuse potential plaintiffs. Namely, even if employees are entitled to opt out of the Arbitration Agreement, they may believe—based on the language in the MSA—that they are not. As a result, potential plaintiffs could very well opt out of this action under the impression that that they are required to do so to maintain their jobs. Moreover, Seek Now's email tells employees, "you will not be giving up any rights to assert legal claims against SeekNow," [DE 28-3 at 157], which could further mislead employees by making them believe that signing the Arbitration Agreement will not affect their ability to participate in this litigation. *See Camp*, 300 F.R.D. at 624 ("[O]mission of detail or the failure to provide information in an ex parte communication can be misleading."). Once again, Seek Now's communications encumber potential plaintiffs' ability to make an informed choice on whether to join the collective action and therefore threaten the proper functioning of the litigation. The Court therefore finds that Seek Now's communications, taken as a whole, are both coercive and misleading and and Seek Now must take action to correct the improper communications.

Next, the Court considers whether the relief requested by Plaintiffs is appropriately tailored to remedy Seek Now's improper communications without excessively hampering Seek Now's ability to communicate with its employees. Plaintiffs ask the Court to issue an order preventing Seek Now from (1) disseminating its updated Master Services Agreement ("MSA") and Arbitration Agreement to putative plaintiffs, (2) requiring employees to sign the MSA and

7

arbitration agreement, and (3) accepting any signatures from employees to the MSA and arbitration agreement. [DE 28]. Plaintiffs also ask that the Court order Seek Now to issue a corrective notice to employees in order to correct the misleading and coercive statements made in the emails and agreements. [DE 28-1 at 135]. These restrictions are sufficiently tailored and will not cause significant hardship to Seek Now. The email Seek Now sent to employees makes clear that this is an "updated MSA," [DE 28-3 at 157], and thus that there an existing MSA in place. In other words, Seek Now will not be left without any agreement in place if the new agreement is made temporarily ineffective. Moreover, Plaintiffs request only temporary relief, so Seek Now will be prevented from collecting signatures on the new agreements for fourteen days and will have an opportunity to be heard in a full hearing, as ordered by the Court below. Given the short duration of the order and the minor burden on Seek Now's speech, the Court finds that the restrictions suggested by Plaintiffs are not particularly onerous and are sufficiently tailored to Seek Now's violation.

To alleviate Seek Now's misleading and coercive communications, the Court will additionally order Seek Now to send a corrective notice—attached hereto—to all individuals who received the previous email. This corrective notice shall be sent on or before November 21, 2025.

### IV.   CONCLUSION

For the reasons set forth above, is **ORDERED** as follows:

(1) Plaintiffs' Emergency Application for Temporary Restraining Order and Motion for Preliminary Injunction [DE 28] is **GRANTED**;

(2) Defendant Seek Now, Inc. shall not:

    a. Disseminate the MSA and Arbitration Agreement to putative plaintiffs;

    b. Require employees to sign the MSA or Arbitration Agreement;

    c. Accept any signatures from employees on the MSA and Arbitration Agreement.

(3) Defendant Seek Now is **ORDERED** to provide the attached corrective notice [see **Appendix A**] to all employees who were asked to sign the MSA and Arbitration Agreement on or before **November 21, 2025**.

(4) A hearing is scheduled for **December 10, 2025 at 11:00 a.m. EST** at the Gene Snyder U.S. Courthouse, Louisville, Kentucky.

Rebecca Grady Jennings, District Judge
United States District Court

November 19, 2025

9

**Appendix A**

You may have recently received a Master Services Agreement ("MSA") and Arbitration Agreement from Seek Now, Inc, as well as an email from us indicating that the MSA must be signed by November 19, 2025. As referenced in the Arbitration Agreement, there is a pending case, *McPherson, et al. v. Seek Now, Inc.*, Civil Action No. 3:25-cv-464-RGJ, in the United States District Court for the Western District of Kentucky. This case was brought by Seek Now inspectors under the Fair Labor Standards Act and alleges that they have been underpaid due to misclassification as Independent Contractors. **The Court has recently issued an order in that case instructing us to advise you of the following:**

First, the Court has ordered that Seek Now, Inc. temporarily cease and desist disseminating the MSA and Arbitration Agreement and halt any enforcement of the agreements. Second, Seek Now, Inc. is temporarily prohibited from asking you to sign the MSA and Arbitration Agreement. Third, Seek Now, Inc. is temporarily prohibited from accepting your signature of the MSA and Arbitration Agreement. In other words, whether or not you have signed the MSA or Arbitration Agreement, you are currently still permitted to assert your claims in the above action.

Given the Court's order, you may presently disregard our earlier email stating that no additional jobs will be assigned to you without the fully executed MSA in place by November 20.